## Estate of Mary Kachline, deceased. Appeal of William A. Kachline.

*Practice, O. C.—Petition—Bill of review—Weight given to answer.*

In a proceeding by bill to review an adjudication, the answer being responsive, the burden is upon the petitioner to overcome it by the satisfactory testimony of two opposing witnesses, or one witness corroborated by other circumstances and facts which would give it greater weight than the answer or be equivalent in weight to a second witness.

*Practice, O. C.—Bill of review—Discretion of court—Laches.*

A bill of review can only be had as a matter of right in two cases: First, for error of law appearing on the face of the record; second, for new matter which has arisen after the decree. It may also be allowed ex gratia for new proofs discovered after the decree, which by reasonable diligence could not have been produced or used before the decree was made. In an application, therefore, addressed to the sound discretion of the court, unreasonable delay without excuse is a circumstance which cannot be ignored and will induce the court to require strict proof of the facts necessary to give jurisdiction.

Argued Dec. 6, 1897. Appeal, No. 30, Oct. T., 1897, by William A. Kachline, from decree of O. C. Northampton Co., dismissing the petition for review of the account of Henry Scholl and William A. Kachline, executors. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Affirmed.

Petition for bill of review. Before SCHUYLER, P. J.

The petition for review set out that Henry Scholl, one of the executors, had neglected to account for a note due the estate of $500. The answer denied that any such note had ever come into the executor's hands or been collected by him.

Other facts appear in the opinion of the court.

The court below dismissed the petition and the petitioner appealed.

*Error assigned* among others was in not ordering and decreeing that the confirmation of the account of the executors be. opened, reviewed and set aside, and said account corrected by surcharging him, Scholl, with the sum of $500 received from John S. Jones, not included in his account.

*M. Kirkpatrick*, with him *W. S. Kirkpatrick*, for appellant.—
The right exists, within five years, to ask for a review of the
account where the petitioner alleges a particular error and veri-
fies his allegation by oath: Hartz's Appeal, 2 Gr. 83.

The Act of October 13, 1840, P. L. 1 (1841), sec. 1, is
plenary and peremptory: Bishop's Est., 10 Pa. 469; Kinter's
Appeal, 62 Pa. 318; Jones's Appeal, 99 Pa. 124; Meckel's
Appeal, 112 Pa. 554.

*O. H. Meyers*, for appellee.

OPINION BY RICE, P. J., April 18, 1898:

The joint account of the executors, etc., of Mary Kachline, de-
ceased, was confirmed absolutely on September 22, 1891. On
January 29, 1896, William A. Kachline, one of the executors,
presented his petition to the orphans' court, praying for a cita-
tion to Henry Scholl, his coexecutor, to appear and show cause
why the confirmation of the account should not be opened, re-
viewed and set aside, and the account corrected by surcharging
Scholl with the amount of a certain note. The averment of
error in the account is in the following language: "Henry Scholl,
one of the accountants, neglected to account for a note of John S.
Jones to Mary Kachline (or Keithline) for $500, which note
was in the possession of said Henry Scholl, and said note was
paid by John S. Jones to said Henry Scholl before said account
was filed, but your petitioner, William A. Kachline, the other
executor, did not learn that it had been paid until some time in
the year 1893." The respondent filed an answer denying that
any such note as that described in the petition had ever come
into his hands or been collected by him, and averring that his
transactions with John S. Jones related to a note for $1,000,
which money came from a trust fund belonging to the estate of
Joseph Kachline, of which he was sole executor. The answer
being responsive it was incumbent on the petitioner to overcome
it by the satisfactory testimony of two opposing witnesses, or of
one witness corroborated by other circumstances and facts which
would give it greater weight than the answer, or be equivalent
in weight to a second witness. That this rule of equity is ap-
plicable to a case where a man prays for the setting aside or
opening of a decree which he assisted in having made is a prop·

osition so plain as not to require argument or the citation of authorities to support it.   After a very patient examination of the testimony we question whether the petitioners' allegation that the Jones note belonged to the estate of Mary Kachline is sustained by the quantity and quality of proof necessary to overcome the effect of a responsive answer, and the testimony adduced by the respondent in support of it.

But was the petitioner entitled to have this question of fact investigated and decided?   Had he not estopped himself to demand the relief prayed for by his laches?   It is argued that if a petition of review is filed within five years after the confirmation of an account and avers all the facts which under the act of October 13, 1840, are necessary to give the court jurisdiction, the question of laches cannot arise.   But it is to be observed, that, although the petition alleges and specifically sets forth errors in the account and is duly verified, the court is to " give such relief as equity and justice may require."   This has been construed to mean that the jurisdiction is to be exercised in accordance with the well settled principles governing the review and correction of final decrees in chancery.   In limiting the time within which the exercise of this jurisdiction might be invoked the legislature did not intend to make that mandatory upon the court which before was discretionary.   Accordingly it has been held in a long line of cases that a review can only be had as a matter of right in two cases : first, for error of law appearing on the face of the record; second, for new matter which has arisen after the decree.   It may also be allowed ex gratia for new proof discovered after the decree, which, by reasonable diligence, could not have been produced or used before the decree was made : Riddle's Estate, 19 Pa. 431; Bishop's Appeal, 26 Pa. 470 ; Stevenson's Appeal, 32 Pa. 318 ; Russell's Appeal, 34 Pa. 258 ; Hartman's Appeal, 36 Pa. 70 ; Green's Appeal, 59 Pa. 235 ; Milligan's Appeal, 82 Pa. 389, 395 ; Scott's Appeal, 112 Pa. 427 ; Priestley's Appeal, 127 Pa. 420, 432.   An application of the latter nature being addressed to the sound discretion of the court, unreasonable delay without excuse is a circumstance which cannot be ignored.   We are not required in the present case to say that it will, of itself, bar relief, but it is perfectly safe to say that it is a strong reason for requiring strict proof of the facts necessary to give the court jurisdiction.

This is the doctrine of Priestley's Appeal, supra, and Scott's Appeal, supra; and it is plain to be seen that it implies no impairment of the provisions of the act of 1840 so far as they relate to an application for a review which requires the exercise of a sound discretion according to equitable principles upon a view of all the circumstances of the case. Vigilantibus et non dormientibus jura subserviunt.

Let us look at the testimony in the light of these principles. The account was confirmed in October, 1891, and within about a year afterwards the petitioner, according to his own admission, learned of the payment of the money to his coexecutor. He did not present his petition of review until January, 1896. This was gross neglect in asserting his right, if he had any, for which, so far as appears, there was no reasonable excuse. Conceding that it was not, per se, a bar to relief, it is a persuasive reason for rigidly scrutinizing the testimony with a view to ascertaining whether he was ever entitled to the relief prayed for. His testimony as to what took place at the time of the appraisement of his mother's estate is as follows : " Q. At that time did you know anything about the Jones note being still unpaid or any portion of it? A. I did not know anything about it. I knew just what mother told me, as I said before, that it was not paid. Q. That is, you had known it before your mother's death? A. Yes, sir ; she told me a little about it but I did not know where the note was."

Again he testified as follows :

" Q. When your mother told you that the note was not paid, where did she say the note was? A. Said Mr. Scholl had it. Mr. Scholl did most of her business. Q. She said Scholl had it? A. It was lying up there in his safe."

Notwithstanding this admitted information of the facts, that the note was unpaid, and was in the possession of his coexecutor, the petitioner said nothing about it to the appraisers and made no inquiry concerning it of his coexecutor or of Jones the maker until a year had elapsed after the confirmation of his account. It is to be noticed further that in his petition he does not aver that he had not knowledge of these facts prior to the filing of the account, but only that he did not know of the payments until afterwards. As we have suggested, there is a serious question raised by the answer and the evidence as to the owner-

ship of the note, but according to the petitioner's own theory he undoubtedly had such knowledge of the facts as would have enabled him to produce and use all of the evidence he now relies on if he had used due diligence. In short, the case upon the merits of his contention is, to say the least, involved in doubt and uncertainty, and by his own admissions he is chargeable with gross laches both before and after the confirmation of the account. Such being the case, we are of opinion that the court exercised a wise discretion in refusing to disturb the decree. We have carefully examined all the authorities cited in the able argument of the appellant's counsel, and find nothing in them to conflict with the foregoing conclusion. As was said in Scott's Appeal, and repeated in Priestley's Appeal: "Something is due to the finality of judicial proceedings."

Decree affirmed and appeal dismissed at the costs of the appellant.