## Stetler's Estate.

*Orphans' court practice—Bill of review—Laches.*

A petition for a bill of review filed more than a year after the confirmation of an executor's account, will be dismissed where the answer filed to the bill denies the allegations therein, and where it appears from the proofs that the petitioner signed a certificate as to the correctness of the account, and his denial of his signature is met with overwhelming proof of its validity, and there is nothing in the evidence to sustain the allegations of fraud set forth in the petition.

Argued Oct. 14, 1908.   Appeal, No. 72, Oct. T., 1908, by Louis H. Stetler, from decree of O. C. Phila. Co., Jan. T., 1906, No. 177, dismissing petition for bill of review in Estate of Harry R. Stetler, deceased.   Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY and HEAD, JJ.   Affirmed.

Petition for bill of review.
The facts appear by the opinion of the Superior Court.

*Error assigned* was decree dismissing the petition.

*G. Von Phul Jones*, for appellant.

*Frederick A. Sobernheimer*, for appellees.

OPINION BY HEAD, J., April 12, 1909:

Harry R. Stetler died January 2, 1905, testate, leaving to survive him five sons, four of whom, including the appellant, were then of full age.   For some years prior to his death, he, with his two sons, Harry and William, was engaged in mercantile business in the city of Philadelphia.   It appears their partnership business began perhaps as early as 1902, and that in October of 1904, formal articles of association in writing were drawn up and executed.   It is provided in this agreement: "The said Harry R. Stetler shall attend solely to the purchase of goods for the business and to the finances of said business, and to the drawing and signing of all checks, etc."

After his death his interest in the firm's business was appraised and taken over at the appraised value by the surviving partners, who were also the executors of his will. About one year after the death of their testator, his executors settled their account which was duly advertised, was called for adjudication in the orphans' court on February 5, 1906, and the decree of adjudication filed on the thirteenth of the same month. Not only were there no exceptions filed, either to the account as stated or to the decree of adjudication, but all of the children of the said testator, including the present petitioner, joined in a written certificate attached to the account declaring that they had examined it, understood it, and desired its confirmation. The appellant at that time lived with his brothers, and the relations between them were amicable and pleasant. Matters thus remained until more than a year later, when the appellant filed his petition in the orphans' court for a bill of review. In his petition the appellant makes no mention of the fact that he had joined with his brothers in certifying to the court that the account of the executors was correct and ought to be adjudicated, and makes no explanation of his act. He avers that the valuation of the interest of his father in the business referred to was much below its actual worth, and that at the time of his father's death the latter was not indebted to the firm in the sum of $1,098.82, with which sum the estate had been charged by the surviving partners in taking over the interest of the deceased partner. An answer was filed which distinctly denies both of these allegations of fact, and the burden of proof was therefore strongly on the petitioner.

When the testimony was taken the petitioner was of course confronted in the first place with the certificate made by himself among others to the correctness of the account, the integrity of which he was then attacking. His answer to this was that he had never signed such a paper. On this question the weight of the testimony was overwhelmingly against him. His denial stood unsupported and alone, while the genuineness of his signature was testified to not only by the accountants but by respectable counsel of the Philadelphia Bar, in whose presence the certificate had been signed. There was no proof to support

his allegation that the interest of his father in the firm had been grossly or fraudulently undervalued, whilst the weight of the testimony clearly shows that the valuation represented the full worth of the interest.

As to the remaining cause of complaint set out in the petition, to wit: that the testator was not indebted to the firm at the time of his death, the petitioner seems to have relied on the proposition that the written articles of partnership, which were dated October 10, 1904, established that a full settlement had been made between the partners, and that by the execution of that instrument the parties had declared that any indebtedness theretofore existing between themselves had been settled and extinguished. We are unable to find in the instrument any evidence to support this contention. The paper itself recognizes the fact that a copartnership already existed and was engaged in the transaction of business, and as has already been stated, it provided that the testator was to have the exclusive control of the financial affairs of the firm. As the evidence of his indebtedness, the surviving partners produced a statement in the handwriting of the testator himself, under the date of June 9, 1904, setting out in detail certain sums of money which he had withdrawn from the business, the items aggregating $1,098.82, and this paper contained the statement, "Due Harry and Willie one third each." The petitioner was unable by evidence to overthrow the prima facie case thus made out by the testator himself.

Under these circumstances it is not easy to see how the learned court below could have done otherwise than dismiss the petition. In Kachline's Estate, 7 Pa. Superior Ct. 163, this court defined the obligations necessarily assumed by a petitioner, who sought to have reviewed a former decree of the orphans' court, in the following language from the opinion of President Judge RICE: "Acccordingly it has been held in a long line of cases that a review can only be had as a matter of right in two cases: first, for error of law appearing on the face of the record; second, for new matter which has arisen after the decree. It may also be allowed ex gratia for new proof discovered after the decree, which, by reasonable diligence, could not have been produced or used before the decree was made. . . . An appli-

cation of the latter nature being addressed to the sound discretion of the court, unreasonable delay without excuse is a circumstance which cannot be ignored. We are not required in the present case to say that it will, of itself, bar relief, but it is perfectly safe to say that it is a strong reason for requiring strict proof of the facts necessary to give the court jurisdiction."

In the light of the principle thus laid down, the accuracy of which cannot be questioned, we think the weakness of the petitioner's case is sufficiently shown in the following excerpt from the opinion of the learned court below: "We might dismiss the petition solely upon the ground that with reasonable diligence the petitioner could at any time have discovered the alleged errors of which he now complains: Kachline's Estate, 7 Pa. Superior Ct. 163; Le Moyne's Appeal, 104 Pa. 321. We think it proper to say in addition that no evidence has been presented which would justify us finding that the settlement of the testator's partnership business was tainted with fraud: Gebbie's Estate, 7 Pa. Dist. Rep. 675; Marr's Appeal, 78 Pa. 66; and furthermore, that we are convinced that no material benefit would inure to the petitioner were we to grant him the review asked." The assignments of error are overruled and the appeal is dismissed at the costs of the appellant.

Decree affirmed.